UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEDIABIDS.COM, INC. | ) | |
| | ) | |
| Plaintiff | ) | 3:01CV708 (DFM) |
| | ) | |
| v. | ) | |
| | ) | |
| EMPIRE SOLUTIONS, INC. AND | ) | |
| DELL COMPUTER CORPORATION | ) | |
| | ) | |
| Defendants | ) | April 22, 2004 |

## OBJECTION TO MOTION TO VOID JUDGMENT

The Plaintiff, Mediabids.com, Inc., hereby objects to the Defendant's motion to void

judgment. The Plaintiff is extremely surprised that the Defendant would represent compliance to

this Court when it is blatantly obvious that that there is no good faith basis for compliance with

the requirements of the Stipulation for Judgment. The Defendant has presented the court with no

facts in support of compliance, because it has not complied. Period.

The specific obligations of the Stipulation for Judgment dated July 26, 2003 and

subsequently approved by this Court will be addressed in turn:

1.  Paragraph 2(a): Payment of $3,000 on or before July 1, 2003. Compliance occurred, albeit late.

2.  Paragraph 2(b): Payment of $1,000 per month on or before the first of each month, beginning on August 1, 2003 and ending on April 1, 2004. No compliance for April 1, 2004 payment. Compliance for other payments.

3.  Paragraph 2(c): Shipment of either (a) Five (5) Dell 2450 servers; One (1) Dell 6450 Server; and One (1) Dell storage unit.; or (b) payment of fair market value of such items. Noncompliance.

**NO ORAL ARGUMENT REQUESTED**

4.    Paragraph 2(d):  Execution of security agreement appended to Stipulation for Judgment and Defendant filing all documents necessary to perfect lien in New York before July 31, 2003.  Noncompliance.

5.    Paragraph 2(e):  Provide Plaintiff with list of accounts receivable on July 1, 2003; November 1, 2003; and March 1, 2003 including amount of debt and addresses for each debtor.  Noncompliance.

As required by paragraph 3 of the Stipulation for Judgment, the Plaintiff sent a "Notice of Failure to Perform Obligations of Stipulation of Judgment" outlining such failures, with a 10 day opportunity to cure, to defense counsel and to the president of the Defendant, Michael Marcellus via certified mail. (See attached).  Both persons received said notice as per the attached signed certifications of receipt.  Defendant has failed to cure any failures outlined in said notice.

As a result, the Defendant's motion should be denied.

FOR THE PLAINTIFF

BY
Michael C. Stumo, Esq.
STUMO & MILLERON, LLC
95 Main Street
P.O. Box 761
Winsted, CT 06098
Tel: 860.379.6199
Fax: 208.441.5092
Email: stumo.and.milleron@snet.net
Juris No. CT 14808

2

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing Motion for Extension was sent via first class mail, postage prepaid, on this date April 22, 2004 to the following:

Raymond Stilwell, Esq.
ADAIR KAUL MURPHY
AXELROD & SANTORO LLP
17 Beresford Court
Williamstown, NY  14221

Gerald Hecht, Esq,
30 Main St., Suite 202
Danbury, CT   06810

Michael C. Stumo, Esq.
Stumo & Milleron, LLC

PX1

*70*

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEDIABIDS.COM, INC. | ) | |
| Plaintiff | ) | 3:01CV708 (AWT) (DFM) |
| v. | ) | |
| EMPIRE SOLUTIONS, INC. AND DELL COMPUTER CORPORATION | ) | |
| Defendants | ) | June 26, 2003 |

### STIPULATION FOR JUDGMENT

IT IS HEREBY STIPULATED AND AGREED, by and between MEDIABIDS.COM, INC.,, plaintiff in the above-entitled action (hereinafter "plaintiff") and EMPIRE SOLUTIONS, INC. (hereinafter "defendant") that the above proceeding shall be settled, and judgment shall be entered, in accordance with the following terms and conditions:

1.  Judgment shall enter in favor of the Plaintiff in the amount of $100,000.

2.  Defendant may discharge all obligations arising from this judgment as follows:

   a.  Defendant shall pay Plaintiff the amount of $3,000 on or before July 1, 2003, receipt of which is acknowledged by plaintiff;

   b.  Defendant shall further pay the amount of $1,000 per month, on or before the first of each month, beginning on August 1, 2003 and ending on April 1, 2004;

   c.  Defendant shall cause the following computer hardware at issue in this case to be shipped to Plaintiff, at Defendant's cost and expense, by July 5, 2003: Five (5) Dell 2450 servers; One (1) Dell 6450 Server; and One (1) Dell storage unit. Any of such hardware items not in Defendant's possession shall be replaced and delivered to Plaintiff at the Defendant's cost and expense by July

31, 2003, or the current fair market value of such items shall be paid to plaintiff as part of Defendant's August 2003 payments. Fair market value shall be the value of such items in new-and not used or refurbished-condition with exactly the same specifications as those at issue in this litigation.

d. Defendant shall execute a security agreement (attached) in favor of Plaintiff on all accounts receivable existing, or created in the future, in favor of Defendant. Defendant shall cause all documents necessary to perfect such lien to be filed, at its own cost and expense, in accordance with the laws of the State of New York on or before July 31, 2003;

e. Defendant shall further provide Plaintiff with a list of accounts receivable on July 1, 2003, November 1, 2003, and March 1, 2003 including the amount of debt, and the address of the debtor with regard to each account receivable.

3.    Plaintiff shall be enjoined from executing upon the judgment amount set forth in paragraph one unless and until Defendant fails to perform its obligations set forth in paragraph two an Plaintiff has sent written notice of said failure to Defendant and Defendant's counsel with 10 days opportunity to cure.

4.    Defendant may, after April 1, 2004, seek to vacate or void this judgment, in its discretion, upon a showing that it performed its obligations set forth in paragraph 2.

## SECURITY AGREEMENT

**THIS SECURITY AGREEMENT**, dated as of June 26, 2003  between EMPIREFIRST, INC., 806 Linden Avenue, Rochester, New York 14625 ("Debtor") and MEDIABIDS.COM, INC., 448 Main Street, Winsted, Connecticut 06098 (Secured Party").

## W I T N E S S E T H:

**WHEREAS,** Secured Party holds an obligation owed by Debtor of even and prior date herewith (the "Liabilities") with payment of the Liabilities and any other liabilities of Debtor to Secured Party to be secured as provided herein.

**NOW, THEREFORE**, as an inducement to Secured Party to accept the Liabilities, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     **Definitions.** Unless the context otherwise requires, all terms used but not expressly defined herein shall have the meanings, if any, given to them in the Liabilities, or if they are not defined in the Liabilities but are defined in the New York Uniform Commercial Code (the "Code"), they shall have the same meaning herein as in the Code.

2.     **Security Interests.** Debtor hereby grants to Secured Party a continuing security interest in all of Debtor's right, title and interest in the Collateral described in Section 3 hereof to secure the performance and due and punctual payment of all of the Liabilities, as defined in Section 4 hereof.

3.     **Collateral.**  The collateral in which Secured Party is granted a security interest by this Security Agreement (herein referred to collectively as the "Collateral") is the following, whether presently owned or existing or hereafter acquired or coming into existence, and all additions and accessions thereto and all substitutions and replacements therefor and improvements thereto, and all proceeds (whether or not cash), products and accounts thereof, including, without limitation, all proceeds of insurance covering the same and of any tort claim in connection therewith:

all accounts receivable of the Debtor existing or hereafter created.

4.     **Liabilities.**  The liabilities secured by this Security Agreement are all liabilities, obligations and indebtedness relating to, or arising under, the Stipulated Judgment filed and ordered in the civil action entitled Mediabids.com, Inc. v. Empire Solutions, Inc., et al, United States District Court, District of Connecticut, No. 3:01CV708(DFM).

5.     **Representations, Warranties and Covenants.**  The Debtor hereby represents, warrants and covenants as follows:

(a)     Except for (i) this and other liens to Secured Party; and (ii) the lien of any taxes incurred in the ordinary course which are not then due, Debtor is and will be the owner of all

*69*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEDIABIDS.COM, INC. | ) | |
| | ) | |
| Plaintiff | ) | 3:01CV708 (AWT) (DFM) |
| | ) | |
| v. | ) | |
| | ) | |
| EMPIRE SOLUTIONS, INC. AND | ) | |
| DELL COMPUTER CORPORATION | ) | |
| | ) | |
| Defendants | ) | June 26, 2003 |

**JOINT MOTION TO AMEND JUDGMENT**

The parties hereby request that the court amend the judgment, pursuant to Rule 59(e) of

the Federal Rules of Civil Procedure, entered on June 25, 2003 in accordance with the

Stipulation for Judgment attached hereto.  Plaintiff Mediabids.com, Inc. and Defendant Empire

Solutions, Inc. have reached the agreement contained in said Stipulation for Judgment and

request that the Court amend the prior judgment accordingly.


FOR THE PLAINTIFF                              FOR THE DEFENDANT


BY Michael Stumo                               BY _____
Michael C. Stumo, Esq.                         Raymond C. Stilwell, Esq.,
STUMO & MILLERON, LLC                          ADAIR KAUL MURPHY
95 Main Street                                 AXELROD & SANTORO LLP
P.O. Box 761                                   17 Beresford Court
Winsted, CT 06098                              Williamsville, N.Y. 14221
Tel: 860.379.6199                              Tel: 585.248.3800
Fax: 208.441.5092                              Fax: 585.272.8280
Email: stumo.and.milleron@snet.net             Email: rcstilwell@adairlaw.com
Juris No. CT 14808                             Juris No. CT 23283

I hereby certify that the foregoing
is a true copy of the original document
on file.    Date: _____

KEVIN F. ROWE
Clerk

By _____
Deputy Clerk



of the Collateral free from any claim, lien, security interest or encumbrance except as stated and Debtor will defend the Collateral against all claims and demands of all persons at any time asserting the same or any interest therein, other than Secured Party, and will take all steps necessary to maintain the security interest of Secured Party in the Collateral hereunder as a fully perfected lien.

(b)     Except for Financing Statements in favor of the Secured Party, no Financing Statement covering any Collateral or any proceeds thereof other than Financing Statements heretofore filed by Debtor at its expense for the benefit of Secured Party in all places necessary to perfect a lien on Secured Party's behalf in the Collateral, are on file in any public office in any jurisdiction except as stated. Debtor will sign and deliver to Secured Party at anytime or from time to time one or more further Financing Statements pursuant to the Code in form sufficient to perfect a lien on all of the Collateral, and will pay the cost of filing the same in all public offices wherever filing is, or is deemed by Secured Party to be, necessary to desirable. Secured Party may prepare and file Financing Statements signed only by Secured Party covering the Collateral and, in jurisdictions where Debtor's signature is required, may sign Debtor's signature to such Financing Statements, and Debtor promises to pay Secured Party all reasonable fees and reasonable expenses incurred in filing the Financing Statements, which fees and expenses shall become a part of the Liabilities.  A carbon, photographic or other reproduction of the Security Agreement or of any Financing Statement shall be sufficient as a Financing Statement.

(c)     Debtor, its agents, servants or employees will not sell or assign or otherwise transfer the Collateral, either in whole or in part, or any interest therein, nor will Debtor remove or permit removal of any of the Collateral from the locations set forth in Schedule I, without the prior written consent of Secured Party. Debtor shall provide Secured Party, upon reasonable notice, with a reasonably complete, specific description of all the Collateral and the locations thereof and shall at all reasonable times give Secured Party, its agents and representatives full access to the Collateral

(d)     Debtor will pay promptly when due all taxes and assessments upon or with respect to the Collateral, the Liabilities, the Note, this Security Agreement, or any other instrument executed pursuant thereto or hereto, except those taxes or assessments which Debtor is contesting in good faith and for which it has set aside reserves for payment in accordance with generally accepted accounting principles. Debtor will not suffer or permit any part of the Collateral to be levied upon under execution, attachment, distraint or other legal process, or otherwise to be subjected to any lien or encumbrance and the security interest hereby granted, except only as may be otherwise expressly permitted by the Notes. Debtor hereby authorizes Secured Party to discharge taxes, assessments, liens, security interests or other encumbrances at any time levied or placed on the Collateral which Debtor is not so contesting, to pay for any insurance on the Tangible Collateral required to be maintained by Debtor hereunder, and pay for, make or provide for any maintenance, repair or preservation of the Tangible Collateral as herein required should Debtor fail to do so within 10 days after notice, but in no event shall Secured Party be under any obligation to do so. Debtor agrees to reimburse Secured Party on demand, with interest at the default rate then in effect under the Note, for any payment made or any expense incurred by Secured Party pursuant to the foregoing authorization and any such payment made or expense incurred by Secured Party shall be a Liability secured hereunder.

(e)     Debtor has and will ensure the maintenance of insurance against loss or damage of the Collateral by fire, theft and such other casualties and risks as are customarily insured

against by persons engaged in a business similar to Debtor's with such insurers, in such amounts and under policies in such form as shall be satisfactory to Secured Party, and unless Secured Party otherwise agrees, shall cause all proceeds to be payable to Secured Party as its interests may appear except as permitted by the Agreement; the proceeds of such insurance shall be part of the Collateral subject to the security interest of Secured Party hereunder, and shall be applied, if no Event of Default exists, in the discretion of Debtor, toward either (i) the replacement, restoration or repair of the damaged or destroyed Collateral or (ii) the payment of the Liabilities in inverse order of maturity, or if an Event of Default exists in the sole discretion of Secured Party, toward either (x) the replacement, restoration or repair of the damaged or destroyed Collateral or (y) the payment of the Liabilities, whether or not due, in such order of application as Secured Party may determine. At any time at the request of Secured Party, Debtor shall deliver any such policies to Secured Party.

6.      **Events of Default.**  The following shall constitute "Events of Default" under this Security Agreement:   (i) failure to pay the obligations in accordance with the terms of the Stipulation of Judgment in the civil action entitled Mediabids.com v. Empire Solutions, Inc., et al, U.S. District Court, District of Connecticut, No. 3:01CV708 (DFM).

7.      **Rights and Remedies Upon Event of Default**.  Upon the occurrence of any Event of Default and at any time thereafter (such default not having previously been cured), Secured Party may accelerate any or all of the Liabilities secured hereby and, in addition to any other rights set forth herein, shall have all the rights and remedies of a Secured Party under the Code, as to any Collateral located in New York, and under the Uniform Commercial Code of any other jurisdiction as to any Collateral therein located (whether or not the Code or such other Uniform Commercial Code applies to the affected Collateral) and shall further have, in addition to all other rights and remedies provided herein or by law, the following rights and powers:

(a)      Secured Party shall have the right to take possession of the Collateral and, for that purpose, may enter, with the aid and assistance of any person or persons, any premises where the Collateral, or any part thereof, is, or may be, placed and remove the same;

(b)      Secured Party may require Debtor to assemble the Collateral and to make it available to Secured Party at a place designated by Secured Party which is reasonably convenient to Secured Party and Debtor;

(c)      Secured Party's obligation, if any, to give additional (or to continue) financial accommodations of any kind to Debtor shall immediately terminate;

(d)      Secured Party shall have the right from time to time to sell, resell and deliver all or any part of the Collateral, at public or private sale or otherwise, at the option of Secured Party, for cash or on credit or for future delivery, in such parcel or parcels and at such time or times and at such place or places, and upon such terms and conditions as Secured Party may deem proper, all without (except as shall be required by applicable statute and which cannot be waived) advertisement or demand upon or notice to Debtor or right of redemption of Debtor, which are hereby expressly waived to the fullest extent permitted by law and any purchaser of Collateral at any such sale (including Secured Party) shall acquire the same absolutely free from any right or

claim of any kind, including without limitation any equity of redemption which, together with all rights of redemption, stay, appraisal which Debtor may have under any rule or statute Debtor hereby specifically and unconditionally waives to the fullest extent permitted by law;

(e)     Upon each such sale, Secured Party may, unless prohibited by applicable statute which cannot be waived, purchase all or any part of the Collateral being sold, free from and discharged of all trusts, claims, right of redemption and equities of Debtor, which are hereby waived and released.

(f)     Secured Party may, in its discretion, apply all proceeds received by Secured Party in respect of any sale of, collection from or other realization upon all or any part of the Collateral (after payment of any amount payable to Secured Party pursuant to Section 9 hereof) in whole or in part against all or any part of the Liabilities in such order as Secured Party shall elect; any surplus of such proceeds held by Secured Party and remaining after payment in full of all of the Liabilities shall be paid over to Debtor or to whomsoever may be lawfully entitled to receive such surplus.

8.     **Rights Cumulative; Notice of Sales.**  All options, powers and rights granted to Secured Party hereunder or under the Notes or any other agreements, documents or instruments or under law shall be cumulative and shall be in addition to any other options, powers and rights of Secured Party under other applicable law or otherwise.  Secured Party shall give to Debtor at least five days' prior written notice, in the manner specified in Section 14 hereof of the time and place of any public sale or the time after which any private sale or any other intended disposition is to be made, and any such notice shall be deemed to satisfy any requirement of reasonable notice.  Debtor shall at all times remain liable for any deficiency on the Liabilities.

9.     **Indemnity and Expense.**  Debtor agrees to indemnify Secured Party from and against any and all claims, losses and liabilities growing out of or resulting from this Security Agreement (including, without limitation, enforcement of this Security Agreement and any actions taken pursuant to Section 8 hereof or any failure to act thereunder), except only for claims, losses or liabilities resulting from Secured Party's gross negligence or willful misconduct.  Debtor will upon demand pay to Secured Party the amount of any and all reasonable expenses, including reasonable fees and disbursements of its counsel and of any agents not regularly in its employ, which Secured Party may incur in connection with (i) the custody, preservation, use or operation of, or the sale of, collection from or other realization upon, any of the Collateral, (ii) the exercise by Secured Party of any of its rights or powers hereunder, or (iii) any failure by Debtor to perform or observe the provisions hereof.

10.     **Responsibility for Collateral.**  Debtor assumes all liabilities and responsibility in connection with all Collateral, and the obligations of Debtor hereunder and under the Liabilities shall in no way be affected or diminished by reason of the loss, destruction, damage or theft of any of the Collateral or its unavailability for any reason.

11.     **Power of Attorney.**  Debtor hereby irrevocable appoints Secured Party, and any officer or agent of Secured Party, with full power of substitution, its true and lawful attorney-in-fact with full, irrevocable power and authority in Debtor's place and stead and in Debtor's name and on

its behalf or in Secured Party's absolute discretion to do any and all things required to be done to carry out the terms or to accomplish the purposes of this Security Agreement as fully and effectually as Debtor could do but for this appointment, including, without limitation, the power to (i) sign Debtor's name to, and to file Financing Statements as provided in Section 5(c) hereof, (ii) to execute, in connection with any sale under Section 7 hereof, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral, (iii) if an Event of Default has occurred and is continuing, to notify and direct the United States Post Office authorities by notice given in the name of the Debtor and signed by Secured Party on behalf of Debtor, to change the address for delivery of all mail addressed to Debtor relating to the Collateral to an address to be designated by Secured Party, and to cause such mail to be delivered to such designated address where Secured Party may open all such mail and remove therefrom any notes, checks acceptances, drafts, money orders or other instruments included in the Collateral, (iv) to enclose the name of the Debtor upon any notes, checks, acceptances, drafts, money orders, instruments or other documents relating to the Collateral and to effect the deposit and collection thereof, and (v) to endorse the name of the Debtor on any other documents relating to the Collateral. Debtor hereby ratifies all actions taken by or on behalf of Secured Party pursuant to this power of attorney or otherwise as provided in this Security Agreement and neither Secured Party nor any of its officers, employees or agents shall be liable for any acts or omissions or for any error of judgment or mistake of fact of law in its or their capacity as such attorney-in-fact. This power of attorney is coupled with an interest and shall be irrevocable until all of the Liabilities are paid in full and this Security Agreement is terminated. The powers conferred upon Secured Party hereunder are solely to protect its interests and shall not impose any duty upon it to exercise any of such powers.

    12.    **Continuing Security Interest; Assignment.** This Security Agreement shall create a continuing security interest in the Collateral and shall remain in full force and effect until the payment in full of all Liabilities. If any time or times, by sale, assignment, negotiation, pledge or otherwise, Secured Party transfers any Liability or Liabilities, which Secured Party shall at all times be free to do, such transfer shall carry with it Secured Party's rights, powers and remedies under this Security Agreement with respect to the Liability transferred, and the transferee shall become vested with such rights and remedies whether or not they are specifically referred to in the transfer, unless, and then only to the extent, that the terms of such transfer otherwise provide. If and to the extent Secured Party retains any other Liability or Liabilities, Secured Party shall continue to have the rights, powers and remedies herein set forth with respect thereto.

    13.    **Termination.** This Agreement shall terminate when all Liabilities in respect of the Notes and all Liabilities for costs of collection and enforcement of this Security Agreement have been fully and indefeasibly paid; provided, however, that all indemnities of Debtor contained in this Agreement shall survive, and remain operative and in full force and effect regardless of, termination of this Agreement.

    14.    **Miscellaneous.** This Security Agreement shall be binding upon Debtor, its successors and assigns, and shall inure to the benefit of Secured Party and its successors and assigns. Debtor shall not assign this Security Agreement except with the express written consent of Secured Party. No failure or delay on the part of Secured Party in exercising any right, power or privilege hereunder or under the Liabilities or any other agreement or instrument in connection herewith or therewith shall operate as a waiver thereof or preclude any other or further exercise

thereof or of any other right, power or privilege.  No amendment or waiver of any provision of this Security Agreement, nor consent to any departure by Debtor herefrom, shall in any event be effective unless the same shall be in writing and signed by Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

15. **Notices.**  Any notice or other thing required or desired to be served, given or delivered hereunder shall be in writing and shall be deemed to have been validly served, given or delivered upon delivery, if served, given or delivered in accordance with the Liabilities.

16. **Governing Law.**  This Security Agreement and the rights and obligations of Secured Party and Debtor hereunder shall be governed by and construed in accordance with the substantive laws of the State of New York, except only to the extent that the validity or perfection of the security interest hereunder, or remedies hereunder, in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York.

17. **Prior Security Interest.**   Debtor's rights of conveyance hereunder are limited by its Security Agreement and Financing Statement with the Small Business Administration, a copy of which is annexed hereto.

**IN WITNESS WHEREOF**, the parties have caused this Security Agreement to be duly executed and delivered on the day and year first above written.

By:_____
Michael Marcellus, president
EmpireFirst, Inc.

STATE OF _____ )
COUNTY OF _____) ss:

On the _____ day of _____ in the year 2003 before me, the undersigned, personally appeared _____ ,  personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacity and that by his/her/their signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEDIABIDS.COM, INC. | ) | |
| | ) | |
| Plaintiff | ) | 3:01CV708 (AWT) (DFM) |
| | ) | |
| v. | ) | |
| | ) | |
| EMPIRE SOLUTIONS, INC. AND | ) | |
| DELL COMPUTER CORPORATION | ) | |
| | ) | |
| Defendants | ) | |

**ORDER APPROVING STIPULATION FOR JUDGMENT**

At Hartford, in said District, this _____ day of _____, 2003.

      It is hereby ORDERED:

      THAT judgment shall enter in favor of the Plaintiff on the terms and conditions set forth in the attached Stipulation for Judgment.

Dated: _____, 2003
        Hartford, Connecticut                  _____
                                        Donna F. Martinez
                                        United States District Judge

FOR THE PLAINTIFF                          FOR THE DEFENDANT


BY _Michael Stumo_                          BY _[signature]_

Michael C. Stumo, Esq.                     Raymond C. Stilwell, Esq.,
STUMO & MILLERON, LLC                      ADAIR KAUL MURPHY
95 Main Street                             AXELROD & SANTORO LLP
P.O. Box 761                               17 Beresford Court
Winsted, CT 06098                          Williamsville, N.Y. 14221
Tel: 860.379.6199                          Tel: 585.248.3800
Fax: 208.441.5092                          Fax: 585.272.8280
Email: stumo.and.milleron@snet.net         Email: rcstilwell@adairlaw.com
Juris No. CT 14808                         Juris No. CT 23283

I hereby certify that the foregoing
is a true copy of the original document
on file.   Date: _1/4/05_

KEVIN F. ROWE
Clerk

By _[signature]_
        Deputy Clerk

***Stumo & Milleron, LLC*** ══════════════════════

**Attorneys at Law**
P.O. Box 761
95 Main Street                                                    Michael C. Stumo
Winsted, CT 06098                                                Nadia D. Milleron

PX2

**CERTIFIED MAIL**

October 20, 2003

Mr. Raymond C. Stilwell, Esq.
17 Beresford Court
Williamsville, NY 14221

Mr. Michael Marcellus
Empire Solutions, Inc.
806 Linden Ave., Suite 300
Rochester, NY 14625

      Re:    <u>Mediabids.com v. Empire Solutions</u>, 3:01CV708 (AWT)(DFM)
               Notice of Failure to Perform Obligations of Stipulation of Judgment

Dear Messrs. Stilwell and Marcellus:

      This letter constitutes written Notice of Failure to Perform Obligations pursuant to paragraph 3 of the Stipulation for Judgment dated June 26, 2003 in the above entitled case. You have 10 days opportunity to cure.

      The Notice arises from the Defendant's failure to:

1.      cause the hardware at issue to be shipped to Plaintiff by July 5, 2003; replaced and delivered to Plaintiff by July 5, 2003; or pay current market value of such items in new condition by August 1, 2003 as required by paragraph 2(c) of the Stipulation;
2.      cause all documents to be filed for the purpose of perfecting the lien as required by paragraph 2(d) of the Stipulation;
3.      provide Plaintiff with the list of accounts receivable and the name and address of each debtor by July 1, 2003 as required by paragraph 2(e) of the Stipulation.

      In August, Empire Solutions sent one Dell 2450 Server and a check for $1,600 which – thought it was sent with no information on its purpose - apparently represents partial payment for the remaining hardware.

      I am also in receipt of a letter from Mr. Marcellus to Mr. Stilwell stating a very low value for the computers from an internet flea market known as ebay where the specifications are different, there are no service or warranty, and the buyer does not know if the item works. However, that is not the relevant market for valuing the equipment at issue. The law is clear that the relevant market is the one in which the party would procure the items in the normal course of business. The facts are clearly that Mediabids sought hardware with certain specifications for

─────────────────────────────────────────────────

tel: 860.379.6199      email: stumo.and.milleron@snet.net      fax: 208.441.5092

hardware and software. Mediabids also sought the technical support, repair availability, warranties and manufacturer/reseller backing that was inherent in the type of transaction in which they engaged. It would be reckless to do otherwise. Thus, the relevant market is retail from Dell or from a reseller.

The models at issue (2450 servers, 6450 server and storage unit) have been discontinued by Dell last year. The replacement models are the 2650 server, the 6650 server and the PowerVault 220/221. The prices for these models are less than the last retail list price of their predecessors. We have assembled the prices for these models with the most equivalent specifications possible regarding the hardware, software, service support and warranties.

The total value is $52,309 calculated as follows:

1    4 PowerEdge 2650 servers at $7,570 = $30,280
2    1 PowerEdge 6650 server at $15,491
3    1 PowerVault storage unit at $6,538

Therefore, since Empire Solutions misled Mediabids in asserting throughout this litigation that it was holding the hardware at issue, it is obligated to provide the current market value. The relevant market is that described above. Within 10 days, please mail a check for $50,709 ($52,309 - $1,600 previously provided), provide me with evidence that you have had the lien perfected, and provide me with the names, addresses and amounts of debt for each debtor at issue. In the absence of compliance with the Stipulated Judgment, we will be forced to initiate collection proceedings.

Thank you for your anticipated cooperation.

Very truly yours,

Michael C. Stumo

Encl.

Cc: Jedd Gould

10/17/2003  13:24    5183480682                              MEDIABIDS                          PAGE  01

Dell Small Business Online Store                                                            Page 1 of 2



**SMALL BUSINESS**

Close

# SYSTEM DETAILS

**Dell recommends Microsoft® Windows® XP Professional**

PoweEdge 2650
~~$7,770~~
**$7,570**
[You Save $200]



As low as **$203/mo.**[1]
No payments for 60 days!
Apply Now   Learn More

🖨 Print

Preliminary Ship Date[2]
**10/29/2003**

| Catalog Number | Description | Product Code | Sku | Id |
|---|---|---|---|---|
| PowerEdge 2650: | PowerEdge 2650, Intel Xeon 2.8GHz, 512K Cache, 533MHz Front Side Bus | 265285 | [221-2654] | 1 |
| Additional Processors: | 2nd Processor, Xeon, 2.8GHz, 512K Cache, 533MHz Front Side Bus | 2P285 | [311-2724] | 2 |
| Special Offers Dollars Off: | Save $200 NOW! | DT200 | [461-2382] | 120 |
| OPERATING SYSTEM: | Windows 2000 Advanced Server with 25 Client Licenses | W2KADVS | [420-3895] [310-1261] | 11 |
| Memory: | 2.0GB DDR, 2X1GB DIMMS | 2GB2D | [311-2735] | 3 |
| Diskette Drive: | 1.44MB Diskette Drive | FD | [340-3961] | 10 |
| CD ROM or DVD ROM: | 24X IDE Internal CD ROM Drive | CD24X | [313-0317] | 16 |
| Power Supplies: | Redundant AC Power (2x500 Watt Power Supplies) | REDPWR | [310-4324] | 36 |
| Chassis Configuration: | VersaRails for Non-Dell 4-Post Rack | 3RACKF | [310-1714] | 28 |
| Hardware Support Services: | 3Yr BRONZE Support, Next Business Day Onsite, S/W Support | BZESWBS | [900-1120] [960-1305] [900-1122] [950-0227] | 29 |
| Installation Support Services: | No Installation | NOINSTL | [900-9997] | 32 |
| Hard Drive Configuration: | On-Board SCSI, 1 to 5 drives connected to on-board SCSI | MS | [340-3947] | 27 |
| Hard Drive Backplane: | 5 Bay (1x5) Hot Plug SCSI Hard Drive Backplane | 1X5BKPL | [340-3932] | 18 |
| First Hard Drive: | 36GB 10K RPM Ultra 320 SCSI Drive | 3610320 | [340-7919] | 8 |
| Second Hard Drive: | 36GB 10K RPM Ultra 320 SCSI Drive | 3610320 | [340-7919] | 23 |
| First Network Adapter: | Dual On-Board NICS | OBNICS | [430-8991] | 13 |
| Keyboard: | No Keyboard Option | N | [310-3281] | 4 |

10/17/2003  13:24    5183480682           MEDIABIDS                        PAGE   02

Dell Small Business Online Store                                          Page 2 of 2

| Mouse: | No Mouse Option | N | [310-0024] | 12 |
|---|---|---|---|---|
| Bezel: | Active Bezel Option for Dell PowerEdge 2650 | BEZEL | [310-1487] | 17 |
| Documentation: | Users Manual,Installation and Trouble Shooting Guide on CD | EDOCS | [310-1989] | 21 |
| Cluster Status: | INFO,NO CLUSTER,STANDALONE | NOCLUS | [461-1306] | 614 |

🖨 Print

**E-Mail**                          **Phone**          **Fax**
SMB_OnlineOrder_Resolution@Dell.com   800-917-3355     800-317-3355

**Address**

Dell Computer Corporation
One Dell Way
Round Rock, Texas 78682

[1] Monthly payment based on 46-month 60 Days Same-Cash-QuickLoan with 46 payments at 9.99% interest rate. Your interest rate and monthly payment may be same or higher, depending on your creditworthiness. If you do not pay the balance within 60 days of the QuickLoan Commencement Date (which is five days after product ships), interest will accrue during those first 60 days and a documentation fee may apply. OFFER VARIES BY CREDITWORTHINESS OF CUSTOMER AS DETERMINED BY LENDER. Minimum transaction size of $500 required. Maximum aggregate financed amount for paperless acceptance not to exceed $25,000. If your order exceeds $25K, a Dell Financial Services rep will contact you to process your documentation. Taxes, fees and shipping charges are extra and may vary. Not valid on past orders or financing. QuickLoan arranged by CIT Bank to Small Business customers with approved credit.

[2] The Preliminary Ship Date represents the estimated time it takes to process your order and custom build your computer based on approved credit card purchase. The Preliminary Ship Date is not intended to provide you with an actual estimated ship date. Your estimated ship date may vary based upon the payment method you choose and other factors. You will receive your Estimated Ship Date in your e-mail confirmation. Customers using E-Check as their method of payment should add 3 days to their Preliminary Ship Date.

Copyright 1999-2003 Dell Inc. For customers of the 50 United States only.
Site Terms of Use : Terms and Conditions of Sale : Dell's Privacy Policy

**Dell Small Business Online Store**              Page 2 of 2

| | | | | |
|---|---|---|---|---|
| Keyboard: | No Keyboard Option | N | 3281J | 4 |
| Monitor: | No Monitor Option | N | [320-0058] | 5 |
| Mouse: | No Mouse Option | N | [310-0024] | 12 |
| Documentation: | Users Manual,Installation and Trouble Shooting Guide on CD | EDOCS | [310-1989] | 21 |
| Clustering Options: | INFO,NO CLUSTER,STANDALONE | NOCLUS | [461-1306] | 614 |

🖶 Print

**E-Mail**                    **Phone**           **Fax**
SMB_OnlineOrder_Resolution@Dell.com     800-917-3355     800-317-3355

**Address**

Dell Computer Corporation
One Dell Way
Round Rock, Texas 78682

[1] Monthly payment based on 48-month 60 Days Same-Cash-QuickLoan with 48 payments at 9.99% interest rate. Your interest rate and monthly payment may be same or higher, depending on your creditworthiness. If you do not pay the balance within 60 days of the QuickLoan Commencement Date (which is five days after product ships), interest will accrue during those first 60 days and a documentation fee may apply. OFFER VARIES BY CREDITWORTHINESS OF CUSTOMER AS DETERMINED BY LENDER. Minimum transaction size of $500 required. Maximum aggregate financed amount for paperless acceptance not to exceed $25,000. If your order exceeds $25K, a Dell Financial Services rep will contact you to process your documentation. Taxes, fees and shipping charges are extra and may vary. Not valid on past orders or financing. QuickLoan arranged by CIT Bank to Small Business customers with approved credit.

[2] The Preliminary Ship Date represents the estimated time it takes to process your order and custom build your computer based on approved credit card purchase. The Preliminary Ship Date is not intended to provide you with an actual estimated ship date. Your estimated ship date may vary based upon the payment method you choose and other factors. You will receive your Estimated Ship Date in your e-mail confirmation. Customers using E-Check as their method of payment should add 3 days to their Preliminary Ship Date.

Copyright 1999-2003 Dell Inc. For customers of the 50 United States only.
Site Terms of Use : Terms and Conditions of Sale : Dell's Privacy Policy

Dell Small Business Online Store



**SMALL BUSINESS**

Close

## SYSTEM DETAILS

**Dell recommends Microsoft® Windows® XP Professional**



**PowerEdge 6650**

~~$16,091~~

**$15,591**
[You Save $500]
Discount Details

As low as **$417/mo.**[1]
No payments for 60 days!
Apply Now  Learn More

Preliminary Ship Date[2]
**10/29/2003**

Print

| Catalog Number | Description | Product Code | Sku | Id |
|---|---|---|---|---|
| Base: | PowerEdge 6650, Intel Xeon 2.0GHz w/1MB Cache, GaL, Redundant Power | 665201 | [221-3346] | 1 |
| Additional Processor: | Quad Processor Intel Xeon, 2.0GHz/1MB Cache PowerEdge 66XX | 4P2001 | [311-3118] | 2 |
| OPERATING SYSTEM: | Windows 2000 Advanced Server with 25 Client Licenses | W2KADVS | [420-3895] [310-1261] | 11 |
| Memory: | 4GB DDR SDRAM, 4X1GB DIMMs | 4GB4D | [311-1549] | 3 |
| Diskette Drive: | 1.44MB Diskette Drive | FD | [340-3612] | 10 |
| CD ROM or DVD ROM: | 24X IDE Internal CD ROM Drive | CD24X | [313-0317] | 16 |
| Chassis Configuration: | No Rails Included, P6650 | NORAIL | [310-1445] | 28 |
| Hardware Support Services: | 3Yr BRONZE Support, Next Business Day Onsite | BZEBSD | [960-1305] [900-0772] [900-0770] | 29 |
| Installation: | No Installation | NOINSTL | [900-9997] | 32 |
| Primary Controller: | 39160 ULTRA3 SCSI LVD CTRL | U3SCSIP | [461-5948] | 9 |
| HD Configuration: | Hard Drives Connected to Motherboard SCSI, No RAID | MSN | [340-8240] | 27 |
| First Hard Drive: | 36GB 10K RPM Ultra 320 SCSI Drive | 3610320 | [340-7919] | 8 |
| Second Hard Drive: | 36GB 10K RPM Ultra 320 SCSI Drive | 3610320 | [340-7919] | 23 |
| Spare Power | Cold Spare Power Supply, P6650, EXPOWER | | [310- | 37 |

Dell Small Business Online Store                                        Page 1 of 2



**SMALL BUSINESS**

Close

# SYSTEM DETAILS

**Dell recommends Microsoft® Windows® XP Professional**



**PowerVault 220/221**
**$6,538**

As low as **$175/mo.**[1]
No payments for 60 days!
Apply Now   Learn More
Preliminary Ship Date[2]
**10/27/2003**

🖨 Print

| Catalog Number | Description | Product Code | Sku | Id |
|---|---|---|---|---|
| PowerVault 220/221: | PowerVault® 220S External SCSI Storage Array | PV220R | [220-4476] | 1 |
| Power Supplies: | Redundant 600W Power Supply for PowerVault 22XS | REDPWR | [310-0682] [310-0677] | 36 |
| Primary Controller: | PowerVault 22XS, Dual, U160 Enclosure Management Module | EMM2 | [340-3090] | 9 |
| 1st Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 8 |
| 2nd Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 23 |
| 3rd Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 54 |
| 4th Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 51 |
| 5th Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 52 |
| 6th Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 53 |
| 7th Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 71 |
| 8th Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 72 |
| 9th Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 102 |
| 10th Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 103 |
| 11th Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 104 |
| 12th Hard Drive: | 18GB, 15K RPM, Ultra 320 SCSI Hard Drive, PV220 | 18G153 | [340-9472] | 105 |
| 13th Hard Drive: | Single Blank Hard Drive Carrier | 1HDBLK | [310-0686] | 96 |
| 14th Hard Drive: | Single Blank Hard Drive Carrier | 1HDBLK | [310-0686] | 95 |
| Documentation: | Hard Copy Documentation PV220S | DOCS | [310-1321] | 21 |
| Rack Rails: | 3rd Party Rack Railsfor the PowerVault 220S in non-Dell Racks | 3RACKF | [310-0685] | 27 |

10/17/2003  13:24    5183480582              MEDIABIDS                    PAGE  06

Dell Small Business Online Store                                        Page 2 of 2

| | | | | |
|---|---|---|---|---|
| | Wide HD) | | | |
| Cluster Status: | Storage Cluster Information No Cluster | CLUSTNO | [310-1786] | 614 |
| Hardware Support Services: | 3Yr Same Day 4Hr Response Parts + Onsite Labor (7 Days x 24 Hours) | W3Y7X24 | [960-1305] [900-2190] [900-2192] | 29 |
| Installation Services: | PowerVault Installation Declined | NOINSTL | [900-9997] | 32 |

🖰 Print

**E-Mail**                          **Phone**           **Fax**
SMB_OnlineOrder_Resolution@Dell.com   800-917-3355      800-317-3355

**Address**

Dell Computer Corporation
One Dell Way
Round Rock, Texas 78682

[1] Monthly payment based on 48-month 60 Days Same-Cash-QuickLoan with 48 payments at 9.99% interest rate. Your interest rate and monthly payment may be same or higher, depending on your creditworthiness. If you do not pay the balance within 60 days of the QuickLoan Commencement Date (which is five days after product ships), interest will accrue during those first 60 days and a documentation fee may apply. OFFER VARIES BY CREDITWORTHINESS OF CUSTOMER AS DETERMINED BY LENDER. Minimum transaction size of $500 required. Maximum aggregate financed amount for paperless acceptance not to exceed $25,000. If your order exceeds $25K, a Dell Financial Services rep will contact you to process your documentation. Taxes, fees and shipping charges are extra and may vary. Not valid on past orders or financing. QuickLoan arranged by CIT Bank to Small Business customers with approved credit.

[2] The Preliminary Ship Date represents the estimated time it takes to process your order and custom build your computer based on approved credit card purchase. The Preliminary Ship Date is not intended to provide you with an actual estimated ship date. Your estimated ship date may vary based upon the payment method you choose and other factors. You will receive your Estimated Ship Date in your e-mail confirmation. Customers using E-Check as their method of payment should add 3 days to their Preliminary Ship Date.

Copyright 1999-2003 Dell Inc. For customers of the 50 United States only.
Site Terms of Use : Terms and Conditions of Sale : Dell's Privacy Policy





PX3



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Michael Marcellus
Empire Solutions, Inc.
806 Linden Ave., Suite 300
Rochester, NY  14625

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X M Marcellus          ☐ Agent  ☑ Addressee

B. Received by (Printed Name)    C. Date of Delivery

M. Marcellus          12/29/03

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:  ☑ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
(Transfer from service label)

7002 0860 0000 5981 5359

PS Form 3811, August 2001          Domestic Return Receipt          102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Raymond Stilwell, Esq.
17 Beresford Court
Williamsville, NY  14221

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X Renee Root          ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

Renee Root          12-30

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
(Transfer from service label)

7002 0860 0000 5981 5342

PS Form 3811, August 2001          Domestic Return Receipt          102595-02-M-1540